UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

STEVEN J. HANYON,

                              Plaintiff,

                                                                    3:23-CV-1640
v.                                                                  (MAD/ML)

EXPRESS AUTO CREDIT CORP.;
ANGELO PASQUALE; and HANNAH
DOOLITTLE,

                              Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

STEVEN J. HANYON
  Plaintiff, *Pro Se*
22 Weber Road
Port Crane, New York 13833


MIROSLAV LOVRIC, United States Magistrate Judge


**ORDER and REPORT-RECOMMENDATION**

## I.      BACKGROUND

### A.      Procedural History

Plaintiff Steven J. Hanyon ("Plaintiff") commenced this action *pro se* on December 27,

2023, against Defendants Express Auto Credit Corp., Angelo Pasquale, and Hannah Doolittle

(collectively "Defendants").  (Dkt. No. 1.)  Plaintiff did not pay the filing fee for this action and

seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)

On January 3, 2024, United States District Judge Mae A. D'Agostino issued a text order

directing Plaintiff to comply with the Federal Rules.  (Dkt. No. 5.)  More specifically, Judge

D'Agostino noted that Plaintiff failed to provide the Court with a short and plain statement of his claim.  (*Id*.)  Judge D'Agostino directed Plaintiff to file a complaint within fourteen days of her order.  (*Id*.)

On January 8, 2024, Plaintiff filed a letter to Judge D'Agostino enclosing the "Complaints that you asked for."  (Dkt. No. 8.)  On January 10, 2024, Plaintiff filed another letter that refers to itself as motion for summary judgment but appears to include additional allegations and thus was construed for purposes of this initial review as a supplemental pleading. (Dkt. No. 10.)

B.    **Complaint(s)**

Construing Plaintiff's letters as liberally[1] as possible, he appears to allege that Defendants violated his rights.  (*See generally* Dkt. Nos. 8, 10.)

More specifically, Plaintiff's letter filed with the Court on January 8, 2024, states that it is enclosing "Complaints" that the Court asked for.  (Dkt. No. 8 at 1.)  Instead, the filing appears to include a series of documents related to Plaintiff's New York State Division of Human Rights complaints that were filed against non-parties the New York State Police and New York State Department of Labor.  (Dkt. No. 8 at 4-10.)  In addition, Plaintiff's letter includes two documents each titled "Complaint": (1) one with caption against non-party Universal Instruments Corporation, and (2) one with a caption against Defendants Express Auto Credit Corp and Pasquale.  (Dkt. No. 8 at 2-3.)  Plaintiff appears to allege that Defendant Express Auto Credit Corp remotely shut off a device in a 2013 Chevy Cruze, which resulted in Plaintiff being

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

"blocked from work" and the termination of an employment contract with non-party Universal Instruments.  (Dkt. No. 8 at 3.)

The document that refers to itself as a motion for summary judgment discusses discrimination he believes he has endured "since [he] was a child d[ue] to New York [S]tate [p]olicies" and a learning disability.  (Dkt. No. 10 at 1.)  Plaintiff outlines his educational experiences and history with an ex-wife.  (*Id*.)

The motion for summary judgment alleges that at some point in time Plaintiff began working for non-party Universal.  (*Id*. at 2.)  Plaintiff alleges that his 2011 Chevy HRR was not running well and eventually "died on an exit to Universal."  (*Id*.)  Plaintiff alleges that he "had to find a new car so [he] went to [Defendant] Express Auto Credit Corp" and purchased a 2013 Chevy Cruze.  (*Id*.)  Plaintiff alleges that "they put a GPS remote shut-off switch in the 2013 Chevy Cruze and shut it off in front of Universal's mail box when [he] was retrieving their mail."  (*Id*.)  Plaintiff alleges that he returned the vehicle to Defendant Express Auto Credit Corp but was unable to obtain another vehicle because of his credit score.  (*Id*.)  Plaintiff alleges that he was "really upset" at Defendant Express Auto Credit Corp "so [he] sent them a[n] email threatening them."  (*Id*.)  Plaintiff alleges that "the State" confiscated his firearm and he granted "them p[er]mission to keep it for one year but [he] also let them know [he is] related to the founding fathers and [he] find[s] it to be an insult to take such a thing away from [him]."  (Dkt. No. 10 at 2-3.)

The motion for summary judgment asserts that (1) Plaintiff is in a lot of debt, (2) has been waiting for unemployment benefits but has not received any, (3) filed the "NYS Poor Person affidavit and also A summary judgment in NYS Supreme Court" which have not been ruled on yet, (4) a judge in the Town of Union imposed a fine that Plaintiff cannot afford, and (5)

Plaintiff pleaded guilty to the violation of disorderly conduct upon the advice of the public

defender.  (Dkt. No. 10 at 3.) The motion for summary judgment asserts that Plaintiff is "so tired

of being lied to and abused by the public that serves New York and being left behind by my

dream company Universal Instruments."  (*Id*.)

Plaintiff does not appear to assert any causes of action and does not appear to seek any

relief.  (Dkt. No. 10 at 3 ["I Steven Hanyon write you such a Motion."].)

Plaintiff seeks leave to proceed IFP.  (Dkt. No. 2.)

## II.     PLAINTIFF'S APPLICATION TO PROCEED IFP

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee.

28 U.S.C. § 1915(a)(1).[2]  Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed

IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to

proceed without prepaying the required filing fee.  28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound

discretion of the court.  *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983).  The Court must

be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting

IFP status.  28 U.S.C. § 1915(a)(1).  To make this threshold showing, a plaintiff must

demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that

---

[2]     The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit
that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman
v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

Here, Plaintiff's submission is incomplete. For example, Plaintiff fails to answer questions 2 and 3 outlining any employment and wages or other income he has received in the last twelve months. (Dkt. No. 2 at ¶¶ 2-3.) In addition, Plaintiff fails to answer question 4, which asks him to identify any money that he has in cash or in a checking or savings account. (Dkt. No. 2 at ¶ 4.)

In this instance, due to Plaintiff's incomplete IFP application, I am unable to conclude that he possesses insufficient funds to pay the $405.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's motion to proceed in this case IFP. (Dkt. No. 2.) To the extent that Plaintiff may wish to renew his request to proceed IFP, and given the Court's unanswered questions about his financial situation, any request to proceed without the prepayment of fees must include a <u>fully</u> completed long form *in forma pauperis* application.

## III. RELEVANT LEGAL STANDARDS GOVERNING INITIAL REVIEW OF A COMPLAINT

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP.

Because, however, as is discussed more completely below, I find that Plaintiff's Complaint is frivolous and fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]"  28 U.S.C. § 1915(e).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's filings with this principle in mind, I recommend that all causes of action be dismissed for three reasons.

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,'

and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting

*Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand

for the relief sought[.]" *Id*. "A complaint may be dismissed under Rule 8 if it is 'so confused,

ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id*.

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses

in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]"

Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for

referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248,

2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and*

*recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A

complaint that does not comply with these Rules "presents far too heavy a burden in terms of

defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the

court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

As it currently stands, Plaintiff's filings wholly fail to provide fair notice of the claims he

attempts to assert. Given its lack of clarity, the Court recommends dismissal of the action

because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P.

Second, and in the alternative, I recommend that Plaintiff's action be dismissed because

he fails to state a claim upon which relief may be granted.[3] Plaintiff fails to allege any causes of

---

[3]     Due to the nature of Plaintiff's filings, it is difficult to precisely determine exactly which
doctrine applies, but his claims are also likely barred. "[I]n the event the underlying state court
proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine."
*Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (Dancks,
M.J.). In the event that Plaintiff's underlying state court proceeding remains pending, his request
for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v.*
*Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from

action and it is thus difficult to analyze Plaintiff's claims.  However, to the extent that he

intended to allege causes of action pursuant to 42 U.S.C. § 1983, he fails to allege the

involvement of a state actor.  *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing

*Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)) ("To state a valid claim under § 1983,

the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under

color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the

Constitution or laws of the United States.").

 Third and in the alternative, I recommend that Plaintiff's action be dismissed to the extent

that it asserts claims against New York State—or any of its arms or agencies—because it is

immune from suit pursuant to the Eleventh Amendment.  *Papasan v. Allain,* 478 U.S. 265, 276

(1986); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *see*

*Ognibene v. Niagara Cnty. Sheriff's Dep't*, 03-CV-0678E, 2003 WL 24243989, at *3 (W.D.N.Y.

Dec. 1, 2003) ("To the extent the plaintiff names various state courts as defendants and seeks

either legal or equitable relief against them under § 1983, they are immune from such suit under

the Eleventh Amendment.").

 For each of these reasons, I recommend that Plaintiff's action be dismissed.

## V. OPPORTUNITY TO AMEND

 Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

---

taking jurisdiction over federal constitutional claims that involve or call into question ongoing
state proceedings."  *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir.
2002).

justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[4]

Although this Court has serious doubts, it is not clear whether a better pleading would permit Plaintiff to assert a cognizable cause of action against Defendants.  Out of an abundance of caution and in deference to Plaintiff's *pro se* status, the undersigned recommends the action be dismissed with leave to amend to cure the defects as stated above.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted.  Fed. R. Civ. P. 8(a).  In addition, the amended complaint must include allegations reflecting how the individual(s) named as Defendant(s) are involved in the allegedly unlawful activity.  Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely

---

[4]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **DENIED without prejudice and with leave to renew**; and it is further

**ORDERED** that should Plaintiff wish to proceed with this action, he must either (i) pay the $405.00 filing fee, or (ii) submit a completed, signed, and certified Long Form IFP application in accordance with this Order and Report-Recommendation **within thirty (30) days** from the date of the filing of this Order and Report-Recommendation.  Plaintiff is advised that, if he does not fully comply with this Order and Report-Recommendation within thirty days, the undersigned will issue a report and recommendation to the assigned district judge that the action be dismissed; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO AMEND** Plaintiff's action pursuant to 28 U.S.C. 1915(e)(2)(B) as frivolous; and it is further respectfully

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[5]  The Clerk shall also send Plaintiff a blank Long Form IFP application.

---

[5]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: January 22, 2024
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[6]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 13 of 41

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,
v.
TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box
40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI,
ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP,
Attorneys for Defendants, 9 Washington Square, Suite 201,
P.O. Box 15085, Albany, NY 12212-5085.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action
filed by William Pflaum ("Plaintiff") against the Town of
Stuyvesant ("Town") and Valerie Bertram, Town Supervisor
("Bertram") (collectively, "Defendants"), is Defendants'
motion for summary judgment pursuant to Fed. R. Civ. P. 56.
(Dkt. No. 59.) For the reasons set forth below, Defendants'
motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint
As a result of the Court's prior decisions (Dkt. Nos. 17,
26), Plaintiff's sole remaining claim in this action is his
First Amendment retaliation claim. More specifically, as
articulated in his Complaint (which was drafted by Plaintiff,
*pro se*, and therefore must be construed with special
solicitude), that claim alleges three separate ways he was
retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges
of ethical violations against Defendant Bertram, she (a)
"collaborated with and supported" the Town's Fire Chief
to deny and/or threaten to deny fire protection to Plaintiff,
(b) "supported and encouraged" various Town employees
to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his
business," and (c) "supported and encouraged" the Town
Assessor's "campaign to intimidate Plaintiff by linking [his]
political speech [with his] real estate assessment." (Dkt. No.
1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing
columns on his Internet blog regarding corruption among the
Town's public officials, the Town filed false criminal charges
against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for
criticizing Bertram, the Town Assessor, and the Town, the
Town Assessor used his authority to raise taxes in order to
intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment
**\*2** In their motion for summary judgment, Defendants
request the dismissal of Plaintiff's Complaint in its entirety.
(Dkt. No. 59.) In support of their motion, Defendants make
the following four arguments. First, Defendants argue that
there was no adverse action against Plaintiff in that there
was no actual chilling of Plaintiff's First Amendment speech
or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of
Law].)

Second, Defendants argue that, in any event, any such adverse
action was not motivated or substantially caused by Plaintiff's
First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was
not personally involved in any deprivation of fire protection
services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled
to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law
Generally construed, Plaintiff makes five arguments in
opposition to Defendants' motion. First, Plaintiff argues that
he engaged in protected speech by creating an Internet blog
on which he publicly criticized Town officials and exposed

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 14 of 41

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

#### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

#### E. Statement of Material Facts

##### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at \*3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at \*4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also* N.Y. Teamsters Conference Pension &

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 15 of 41

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting 🚩 *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); 🔖 *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

**2. Undisputed Material Facts**

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking

from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 16 of 41

move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was

no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 17 of 41

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

satisfied that the citations to evidence in the record support the movant's assertions. *See* *Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug.

2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." 🚩 *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." 🚩 *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing 🚩 *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." 🚩 *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 19 of 41

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:23-cv-01640-MAD-ML    Document 11    Filed 01/22/24    Page 20 of 41

 **\*10**  For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1  Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2  The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3  As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4  The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5  For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ...

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 21 of 41

**Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)**

of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01640-MAD-ML    Document 11    Filed 01/22/24    Page 22 of 41

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

*\*1* The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

## I. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

*\*2* Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556

U.S. at 678 (citing 🚩 *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under 🚩 § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. 🚩 *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting 🚩 *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 24 of 41

nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt.
No. 1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y.
Mar. 16, 2011)* (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28
U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295
(quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, *5 (N.D.N.Y. Nov. 2, 2015)* ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend out
of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")

(quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 3170384

---

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 24243989
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Salvatore **OGNIBENE**, Plaintiff,

v.

**NIAGARA** COUNTY **SHERIFF'S** DEPARTMENT,
**Niagara** County District Attorney's Office, Samuel
Novara, Esq., Town of Wheatfield Court, **Niagara**

County Court, **Niagara** County Supreme Court, New

York State Appellate Division, 4 TH Judicial Dept.,

and New York State Court of Appeals, Defendants.

No.

**03**
–
**CV**
–
**0678E**
(SR).
|
Dec. 1, 2003.

*** Start Section
...

**Attorneys and Law Firms**

Salvatore **Ognibene**, **Niagara** Falls, NY, pro se.

DECISION AND ORDER

ARCARA, J.

*INTRODUCTION*

 **\*1** Plaintiff has filed this *pro se* action seeking relief
under 42 U.S.C. § 1983 (Docket No. 1, 3) and has
requested permission to proceed *in forma pauperis* (Docket
No. 2). Plaintiff claims that the defendants have violated his
constitutional rights in relation to an arrest that occurred on
July 10, 1997 for which plaintiff was given an Adjournment
in Contemplation of Dismissal ("ACD")[1] on November
17, 1997 in the Town of Wheatfield (New York) Town Court.
(Complaint, ¶ 5). Apparently, plaintiff later filed some type
of motion or appeal in the Town Court of Wheatfield seeking

to dismiss the ACD. (Docket No. 3, Table of Contents).[2]
This motion was denied and appeals ensued through the state
court...

*** Start Section
....1998).

Based on its evaluation of the complaint, the Court finds that
plaintiff's claims must be dismissed pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(ii) because they fail to state a claim upon
which relief may be granted.

*Plaintiff's Allegations*

Plaintiff alleges that his constitutional rights were violated
and therefore brings this action pursuant to 42 U.S.C. §
1983. In order to state a claim under § 1983, plaintiff must
allege (1) that the challenged conduct was attributable at least
in part to a person acting under color of state law, and (2)
that such conduct deprived plaintiff of a right, privilege, or
immunity secured by the Constitution or laws of the United
States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d
Cir.1993).

Plaintiff names as defendants: (1) the **Niagara** County
**Sheriff's** Department ("**Sheriff's** Department"), the law
enforcement agency that responded to his daughter's "911"
telephone call, which occurred while plaintiff was admittedly
striking her in his home on July 10, 1997, and took plaintiff
into custody (Complaint, Statement of Claim, ¶¶ 1–3); (2) the
**Niagara** County District Attorney's Office ("DA's Office")
that, assumably, prosecuted plaintiff following this arrest;
(*id.,* ¶¶ 4–5); (3) Samuel J. Novara, plaintiff's defense
counsel in the proceedings in Town Court (*id.,* ¶ 6); (4)
the Town of Wheatfield Town Court ("Wheatfield Town
Court"), "Presiding" Town Justice Robert Cliffe, where
plaintiff was prosecuted and obtained an ACD on November
17, 1997 (*id.,* ¶ 5); (5) the **Niagara** County Court ("County
Court"), "Presiding" Judge, Hon. Peter Broderick, the court
to which plaintiff appealed on or about April 14, 2000
(Complaint; Table of Contents, ¶ 3); (6) the New York
Supreme Court, **Niagara** County ("State Supreme Court"),
"Presiding" Justice, Hon. John Lane, the court to which
plaintiff appealed on or about February 16, 2001 and which
denied his request for relief on or about June 13, 2001
(Table of Contents, ¶ 3); (7) the New York State Supreme

Court, Appellate Division, Fourth Department ("Appellate Division"), "Presiding" Justice Pine, and Justices Hayes, Hurlburt, Kehoe and Burns, the court to which plaintiff further appealed and which dismissed plaintiff's appeal on April 23, 2002 for failure to prosecute (Complaint, Statement of Claim, ¶ 8; Table of Contents, ¶ 6 A—B); and (8) the New York Court of Appeals ("Court of Appeals"), "Presiding" Justice, Hon. Judith Kaye, which denied plaintiff leave to appeal on or about September 17, 2003....

\*\*\* Start Section

... his arrest (Complaint, Statement of Claim, ¶¶ 2–4), and the "faulty procedures" of the prosecutor and the courts. The complaint also alleges that the prosecutor and the courts named as defendants failed to insure that plaintiff obtained his *Miranda* warnings and his "right" to give a statement, and that they failed to insure that he obtained his various Sixth Amendment rights, such as the right to a speedy public trial, the right to an impartial jury, the right to notice of the charges against him, the right to confront witnesses, the right to compulsory process, and the right to counsel. (*Id.,* ¶¶ 4–10). The complaint also includes a claim of either a violation of 🔖 § 1983 or legal malpractice or both against plaintiff's defense attorney. (*Id.,* ¶ 6).

### Claims against *Sheriff's* Department, DA's Office and Wheatfield Town Court

Plaintiff's claims against the *Sheriff's* Department, the DA's Office and the Wheatfield Town Court must be dismissed. First, plaintiff's 🔖 § 1983 claims against these three defendants accrued at the earliest on July 10, 1997 when he was arrested, and at the latest either on November 17, 1997, when the charges against him were resolved by means of an ACD (Complaint, Statement of Claim, ¶¶ 3–5; Table of Contents, ¶¶ 1–2), or on March 28, 2000, when a motion plaintiff made in the Town Court was denied. (Table of Contents, ¶ 2). The statute of limitations for an action filed under 🔖 42 U.S.C. § 1983 in a federal court sitting in New York is three years. 🔖 *Owens v. Okure,* 488 U.S. 235, 251, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); 🔖 *Jewell v. County of Nassau,* 917 F.2d 738, 740 (2d Cir.1990). Therefore, any and all claims against these defendants are time barred.

Second, the claims against the *Sheriff's* Department, the DA's Office, and the Wheatfield Town Court must also be

dismissed because there is no allegation that any of the individual government officials, such as the Town Justice, deputies or assistant prosecutors, were acting pursuant to a policy or custom of the Town of Wheatfield or *Niagara* County. In the absence of such an allegation, the complaint fails to state a claim for relief and must be dismissed.

*See* 🔖 *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not subject to 🔖 § 1983 liability solely on the basis of a respondeat *superior* theory. 🔖 *Collins v. City of Harker Heights,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); 🔖 *Monell,* 436 U.S. at 694.

Additionally, to the extent that the plaintiff may have intended to sue the Town Justice individually (Complaint, Defendant's Information), in addition to or instead of the Town Court, the Town Justice would be entitled to absolute judicial immunity.

*See* 🔖 *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (internal quotations and citation omitted). The same would be true with respect to the District Attorney or any Assistant District Attorneys involved in the prosecution of plaintiff. Prosecutors are entitled to absolute immunity from suits brought under 🔖 § 1983 "arising out of [their] prosecutorial duties that are 'intimately associated with the judicial phase of the criminal process.'" ' 🔖 *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996) (quoting 🔖 *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)), *cert. denied,* 520 U.S. 1115 (1997). Accordingly, the claims against the *Sheriff's* Department, the DA's Office, the Wheatfield Town Court and, to the extent he is a defendant herein, the Town Justice, Robert B. Cliffe, are dismissed.

### Claims against County Court, State Supreme Court, Appellate Division, and Court of Appeals

**\*3** Plaintiff's complaint purports to allege that these courts somehow violated his numerous Sixth Amendment rights. In reality, however, what plaintiff is alleging is that these courts were in error when they denied or dismissed his various requests to overturn the ACD disposition of the charges arising from the July 10, 1997 incident. These claims too must be dismissed.

To the extent the plaintiff names various state courts as defendants and seeks either legal or equitable relief against them under § 1983, they are...

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01640-MAD-ML    Document 11    Filed 01/22/24    Page 30 of 41

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1**  The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 31 of 41

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 32 of 41

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 33 of 41

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), 🚩*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩*Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩§ 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩*Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩*Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩§ 1983. 🚩*Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩§ 1983. 🚩*Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 35 of 41

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1   I note, however, that the report-recommendation would survive even *de novo* review.

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 36 of 41

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action
*pro se* on June 2, 2022, claiming Dr. Mary O'Connor
("Defendant") violated 🚩 42 U.S.C. § 1983 and 🚩 § 1985.
(Dkt. No. 1.) Plaintiff simultaneously moved to proceed
*in forma pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed
Plaintiff's motion to proceed IFP, the undersigned GRANTS
the motion for purposes of this review. *See id.* The
undersigned now considers the sufficiency of the allegations
set forth in the Complaint under 🚩 28 U.S.C. § 1915(e). For
the reasons discussed below, the undersigned recommends
that the Court dismiss Plaintiff's Complaint in its entirety with
leave to amend. (Dkt. No. 1.)

**I. SUMMARY OF THE COMPLAINT** [1]
This is the second of two actions Plaintiff initiated against
various individuals stemming from a child custody dispute in
New York State Family Court. (*See* Dkt. No. 1; *see also* Case
No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker
I*"), Plaintiff claimed several New York State Family Court
Judges, two private attorneys, and the Averill Park School
District violated her First and Fourteenth Amendment rights.
(Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff
restates and reasserts many of the same claims against Dr.
Mary O'Connor, a private individual ordered by the New State

Family Court to render forensic psychological evaluations in
the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.)
Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction
under 28 U.S.C. § 1331 and § 1343, purporting to advance
several causes of action under 🚩 42 U.S.C. § 1983 and 🚩 §
1985. (Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and
standards established and/or maintained by Defendant/s [sic]
violate the Right to Free speech under the First Amendment,
and the Due Process and Equal Protection clauses of the
Fourteenth Amendment to the U.S. Constitution." *Id.* at
4. Plaintiff accordingly recycles many of the same claims
against Dr. O'Connor that she asserted against the Defendants
in *Walker I. See id.* at 9-31. Through the first cause of action,
Plaintiff claims Dr. O'Connor "religiously discriminated
against" her in violation of the First Amendment. *Id.* at 9.
In her second cause of action, Plaintiff claims Dr. O'Connor
retaliated against her in violation of the First Amendment.
*Id.* at 10. By her third cause of action, Plaintiff claims
Dr. O'Connor "deprived [her] of the rights of a mother to
her children and due process and freedom of speech" in
violation of the First and Fourteenth Amendments. *Id.* at
12-13. Through her fourth cause of action, Plaintiff claims
Dr. O'Connor discriminated against her. *Id.* at 14-19. In her
fifth cause of action, Plaintiff claims Dr. O'Connor used her
position to "maliciously intentionally inflict harm and pain
on the Plaintiff." *Id.* at 20. By her sixth and final cause of
action, Plaintiff claims Dr. O'Connor engaged in sex bias
discrimination. *Id.* at 25.

**II. STANDARD OF REVIEW**
**\*2** This Court must conduct an initial review of complaints
filed *in forma pauperis*, and "complaints in which a prisoner
seeks redress from a governmental entity or officer or
employee of a governmental entity." 🚩 28 U.S.C. § 1915(e)
(2)(B) (governing complaints filed *in forma pauperis*); 28
U.S.C. § 1915A (governing complaints filed by prisoners
against the government). When reviewing these types of
complaints, this Court must "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if
the complaint ... is frivolous, malicious, or fails to state a
claim upon which relief may be granted; or ... seeks monetary
relief from a defendant who is immune from such relief." 28
U.S.C. § 1915A; 🚩 28 U.S.C. § 1915(e)(2)(B); *see also Allen
v. Stringer*, No. 20-3953, 2021 WL 4472667, at \*1 (2d Cir.
Sept. 30, 2021) (applying 🚩 Section 1915(e)(2)(B)); *Carr v.*

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 37 of 41

*Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A). [2]

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983;

Case 3:23-cv-01640-MAD-ML    Document 11    Filed 01/22/24    Page 38 of 41

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

*Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g., Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding that a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g., Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York*

*State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

## B. Plaintiff's Section 1985 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). [4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g., Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g., Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 39 of 41

(GTS) (ATB), 2016 WL 4046780, at \*18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/ or an underlying constitutional violation, Plaintiff's § 1985 claim is likewise dismissed.").

**\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See* Iqbal, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g.,* Webb, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at \*18 (E.D.N.Y. Sept. 2, 2014); Morpurgo, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 9-31; *see, e.g., Tirse*, 2016 WL 4046780, at \*18 (dismissing a § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation".).) Plaintiff alleged

in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also* Iqbal, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at \*3; *Tirse*, 2016 WL 4046780, at \*18; *Alston*, 2014 WL 4374644, at \*18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 42 U.S.C. § 1985(3) for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B) (ii). [5]

### C. Jurisdiction

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at \*10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

**\*6** First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally* Younger v. Harris, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL 226798, at \*11. In Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute

raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at *3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at *3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g., Stumpf*, 2022 WL 2062613, at *3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at *4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at *3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See* 🔺*Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.,* 🔺*Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at *4 n.4; *Amato*, 2022 WL 226798, at *10; *Fernandez*, 2014 WL 5823116, at *4.

## IV. CONCLUSION

**\*7** For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Walker v. O'Connor, Not Reported in Fed. Supp. (2022)

Case 3:23-cv-01640-MAD-ML   Document 11   Filed 01/22/24   Page 41 of 41

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2341420

## Footnotes

1    The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review. *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

2    Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

3    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See* *Sealed Plaintiff*, 537 F.3d at 191.

4    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See* *Sealed Plaintiff*, 537 F.3d at 191.

5    The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

6    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.